**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **JAMES K. MONROE** | ) | |
| | ) | |
| **Plaintiff(s),** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **2:06-CV-928-MEF** |
| **OFFICER L. THOMAS, ET AL.** | ) | |
| | ) | |
| **Defendant(s).** | ) | |
| | ) | |
| | ) | |

**ANSWER AND SPECIAL REPORT**

COME NOW the Defendants, Louis Thomas, C.T. Jenkins, Richard Golden, Levan Thomas, Leon Forniss and George Edwards, by and through the Attorney General for the State of Alabama, the Honorable Troy King, and in accordance with this Honorable Court's November 6, 2006 Order, offer the following:

**PARTIES**

1. The Plaintiff, James K. Monroe, is and inmate currently incarcerated at Staton Correctional Facility ("SCF").

2. Defendant Louis Thomas is currently employed by the Alabama Department of Corrections ("ADOC") as a Correctional Officer II at SCF.

3. Defendant C.T. Jenkins is currently employed by ADOC as a Correctional Officer II at SCF.

4. Defendant Richard Golden is currently employed by ADOC as a Correctional Officer II at SCF.

5.  Defendant Levan Thomas is currently employed by ADOC as a Correctional Warden II at SCF.

6.  Defendant Leon Forniss is currently employed by ADOC as a Correctional Warden III at SCF.

7.  Defendant George Edwards is currently employed by ADOC as a Correctional Officer Supervisor II at SCF.

**EXHIBITS**

EXHIBIT 1 – Affidavit of Annie Lattimore certifying various documents

EXHIBIT 2 – Affidavit of Levan Thomas

EXHIBIT 3 – Affidavit of Louis Thomas

EXHIBIT 4 – Affidavit of Richard Golden

EXHIBIT 5 – Affidavit of George Edwards

EXHIBIT 6 – Affidavit of C. Tyrone (C.T.) Jenkins

EXHIBIT 7 – Affidavit of Leon Forniss

**PLAINTIFF'S CLAIMS**

Plaintiff essentially has filed two form complaints as one document.  His first form appears to allege a failure to protect and his second form alleges deliberate indifference to his medical needs.

The first form complaint names Correctional Officer I Louis Thomas, Sergeant C.T. Jenkins, Sergeant Richard Golden, Assistant Warden Levan Thomas and Warden Leon Forniss.  In his second complaint, Plaintiff adds as a defendant George Edwards. All Defendants have been served.

Plaintiff alleges that on September 4, 2006 at 7:30 p.m. he was watching television in the day room when he and other inmates were attacked and stabbed by inmate Andre Jolly.  Plaintiff claims inmate Jolly was experiencing mental problems. Plaintiff alleges Louis Thomas was assigned to Plaintiff's dorm, which at this time was dark, but Thomas had left his post inside of the dorm.  After the attack, other inmates ran out of the dorm to inform Officer Thomas, who then called for backup.  According to the Plaintiff, Officer (Sergeant) C.T. Jenkins and CO I Davis (not named as a defendant) arrived and subdued inmate Andre Jolly.

It should be noted that only Sergeant Jenkins and Officer Thomas are referred to in the body of the first form complaint and the only mention of Defendant Jenkins is that he arrived after being summoned and assisted in subduing inmate Jolly.  No allegations are made against Defendants Richard Goldman, Levan Thomas, Leon Forniss or George Edwards in the first form complaint.

In Plaintiff's second form complaint he lists in the style Warden Levan Thomas, Sergeant Jenkins and Captain George Edwards.  Plaintiff's sparse allegations only implicate two ADOC defendants in any alleged wrongdoing.  Plaintiff states that after being stabbed on September 4, 2006 at 7:30 p.m., he was taken to the healthcare unit and, "I was bleeding excessively at which time Warden Thomas, Sgt. Jenkins was there."

On his attached sheet Plaintiff states:

the nurse informed the warden that the impact of the stab wounds from which blood was streaming tremendously she couldn't stop the bleeding that plaintiff (I) needed to be taken to a free world hospital, the doctor was notified.  The warden denied delayed me prompt access to outside hospital treatment, instead before providing outside treatment he delayed, prolonged it until an investigation was conducted regarding the stabbing incident that took some two to three hours long before he permitted for me to be taken to a free world hospital…

3

With liberal construction the only two ADOC defendants implicated by Plaintiff's second form complaint are C.T. Jenkins, who was merely present when Plaintiff was receiving medical treatment, and Levan Thomas, who was present and allegedly denied or delayed Plaintiff access to free world medical care.

In summary, Plaintiff appears to be alleging that Officer Louis Thomas was deliberately indifferent to Plaintiff's safety by leaving his post and Warden Levan Thomas was deliberately indifferent to Plaintiff's medical needs by delaying access to free world medical care. Plaintiff has alleged no factual allegations against any other defendant that can liberally be construed as a cause of action.

## DEFENDANTS' RESPONSE

1. The Defendants deny that they violated the Plaintiff's constitutional rights.

2. The Defendants deny each and every material allegation not specifically admitted herein and demand strict proof thereof.

3. The Plaintiff fails to state a claim upon which relief can be granted pursuant to 42 USC §1983 or any other cause of action.

4. The Plaintiff makes no specific factual allegations against anyone except C.T. Jenkins, Louis Thomas and Warden Levan Thomas.

5. The Defendants deny that they were deliberately indifferent to Plaintiff's security and medical needs.

6. The Defendants are immune from suit under the Eleventh Amendment to the United States Constitution.

7. Defendants assert the defenses of sovereign immunity and qualified immunity.

8.    Under 42 U.S.C. 1983 respondeat superior is not available to find an individual liable.

## STATEMENT OF FACTS

On September 4, 2006, Officer Louis Thomas was assigned to SCF's second shift in the B-Dorm as a cubical officer. (Ex. 1, Pg. 3)  At approximately 7:15 p.m., Officer Louis Thomas was making rounds in Bay 1.  When he returned to the dayroom, he saw inmates Andre Jolly and Vincent Crim struggling with each other. (Ex. 3, Pg. 2; Ex. 1, Pg. 3)  Officer Thomas immediately called a code blue and Sergeant C.T. Jenkins, Officers Grayling Davis, Quincy Walton and James Cannon reported to B-Dorm.  (Ex. 1, Pg. 3; Ex. 3, Pg. 2)  Inmate Jolly had a prison made knife in his right hand and Officer Davis grabbed inmate Jolly by the arms and placed him against the wall.  (Ex. 1, Pg. 3)  Sergeant Jenkins placed inmate Jolly in a head lock and immediately moved inmate Jolly outside the B-Dorm and on the sidewalk as Officer Walton removed the knife from inmate Jolly's hand (Ex. 1, Pg. 3) Officer Weathers placed handcuffs on inmate Jolly and escorted him to the shift commander's office as the other officers made sure all inmates were located in their assigned bays. (Ex. 1, Pg. 3).  Officer Malcolm Jacobs escorted Plaintiff James Monroe outside of B-Dorm. (Ex. 3, Pg. 1)  Plaintiff was bleeding from an apparent stab wound to the back and right elbow.  Plaintiff was escorted to the Health Care Unit by Officer Malcolm Jacobs.

At approximately 7:30 p.m., Jenkins notified Warden Leon Forniss and Warden Levan Thomas of the incident.  At approximately 7:40 p.m., Jenkins notified I&I investigator Ed Sasser. (Ex. 1, PG. 4).

After being informed of the incident, Warden Levan Thomas left his residence and arrived at SCF at approximately 8:14 p.m. He entered the Health Care Unit to check on the severity of the inmates' wounds. (Ex. 2, Pg. 2)

Investigator Sasser arrived at SCF at approximately 8:23 p.m. and proceeded to investigate the incident.

The medical evaluations of inmates Monroe and Crim revealed the necessity for the inmates to be transferred to Baptist Medical Center in Montgomery by ADOC transport vans inasmuch as the injuries were not severe enough to require transportation via ambulance. (Ex. 2, Pg. 2) Inmates Monroe and Crim were transported to Baptist Medical Center at approximately 8:58 p.m. Inmate Monroe was never denied access to immediate medical attention.

## ARGUMENT

### Summary Judgment Standard

Summary judgment may be granted only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues and that he is due to prevail as a matter of law. *See Clark & Clark, Inc.,* 929 F.2d 604 (11th Cir. 1991). Once that initial burden has been carried, however, the non-moving party may not merely rest upon his pleading, but must come forward with evidence supporting each essential element of his claim. *See Celotex Corp*

*v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986);

*Barfield v. Brierton*, 883 F.2d 923 (11th Cir. 1989). Unless the Plaintiff, who carries the

ultimate burden of proving his action, is able to show some evidence with respect to each

element of his claim, all other issues of facts become immaterial and the moving party is

entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317

(1986); *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990). As the Eleventh Circuit has

explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails
> to establish a prima facie case. "In such a situation, there can be
> 'no genuine issue as to any material fact,' since a complete failure
> of proof concerning an essential element of the non-moving party's
> case necessarily renders all other facts immaterial." [Citation
> omitted]. Thus, under such circumstances, the public official is
> entitled to judgment as a matter of law, because the plaintiff has
> failed to carry the burden of proof. This rule facilitates the
> dismissal of factually unsupported claims prior to trial.
> 898 F.2d at 1532.

**I. Plaintiff allegations do not sustain a cause of action for deliberate indifference to Plaintiff's safety.**

Plaintiff alleges that Officer Louis Thomas left his post in Plaintiff's dorm at 7:30

p.m. on September 4, 2006. According to Plaintiff's complaint, inmate Andre Jolly

attacked and stabbed inmates Michael Grant, Vincent Crim and Plaintiff. A reasonable

person can discern from the allegations in Plaintiff's complaint that this vicious attack, as

far as the Plaintiff was concerned, came out of the blue. Plaintiff does not allege that

prior to this date, he was fearful of inmate Jolly or that he informed anyone that he was

fearful of any type of attack from inmate Jolly. The lack of allegations of fearfulness

prior to the attack reasonably leads to the logical conclusion that inmate Monroe did not

feel threatened and therefore had nothing to report to any correctional officer concerning his safety.

In *Brown v. Hughes*, 894 F2d, 1533 at 1536 (11th Cir. 1990) the court held:

> When officials become aware of a threat to an inmate's health and safety, the eighth amendment's proscription against cruel and unusual punishment imposes a duty to provide reasonable protection. *Hopkins v. Britton*, 742 F.2d 1308, 1310 (11th Cir.1984); *Gullatte v. Potts*, 654 F.2d 1007, 1012 (5th Cir. Unit B Aug. 1981). Merely negligent failure to protect an inmate from attack does not justify liability under section 1983, however. *Davidson v. Cannon*, 474 U.S. 344, 347-48, 106 S.Ct. 668, 670, 88 L.Ed.2d 677 (1986)
>
> Prison officials must have been deliberately indifferent to <u>a known danger</u> before we can say that their failure to intervene offended "evolving standards of decency," thereby rising to the level of a constitutional tort. *Estelle v. Gamble*, 429 U.S. 97, 105-06, 97 S.Ct. 285, 291-92, 50 L.Ed.2d 251 (1976); *Hopkins*, 742 F.2d at 1310. <u>The known risk of injury must be " 'a strong likelihood, rather than a mere possibility' "</u> before a guard's failure to act can constitute deliberate indifference. *Edwards v. Gilbert*, 867 F.2d 1271, 1276 (11th Cir.1989) (quoting *State Bank of St. Charles v. Camic*, 712 F.2d 1140, 1146(7th Cir.1983)); see *Meriwether v. Faulkne*r, 821 F.2d 408, 417 (7th Cir.1987); *Molton v. City of Cleveland*, 839 F.2d 240, 243 (6th Cir. 1988). (Emphasis Added)

Plaintiff alleges Officer Thomas left his post, when in fact Officer Thomas was assigned as a cubical officer in B-Dorm at the time Plaintiff was attacked. In fact, Officer Thomas was making routine rounds in bay 1 contrary to Plaintiff's allegation that he had left his post in violation of prison policy. Even if Plaintiff were correct in stating that Officer Thomas had left his post at a time he should not have, it would only constitute negligence, not a constitutional tort.

In *Roy v. Johnson* 97 F.Supp.2d 1102 (Ala SD, 2000), the District Court was reviewing a case substantially similar to the instant case wherein the plaintiff claimed an officer was deliberately indifferent to his safety when he left his post and the Court held:

> Plaintiff is also required to establish that Defendant Bumham was deliberately indifferent. The only evidence directed to this element is Plaintiff's allegation that Defendant Bumham was not at his post when the incident occurred, which is contested by Defendant Burnham. This allegation alone is insufficient to establish deliberate indifference. Assuming without deciding that Defendant Bumham was not at his post when the incident occurred, Plaintiff's lone allegation only indicates that Defendant Burnham's action was negligent, at best, if true. However, no liability can be imposed in a § 1983 action for negligent acts. *Daniels v. Williams*, 474 U.S. 327, 328, 106 S.Ct. 662, 663, 88 L.Ed.2d 662 (1986). Accordingly, the Court finds that Plaintiff's evidence is insufficient on the issue of whether Defendant Burnham was deliberately indifferent. *Hale*, 50 F.3d at 1582 (finding that the guard's failure to make a round when the assault occurred was "insufficient to support the level of deliberate indifference and causal connection necessary to hold [guard] personally responsible."). Therefore, reasonable jurors would not be able to find for Plaintiff on the element of deliberate indifference. *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512.

*Roy v. Johnson* 97 F.Supp.2d 1102, 1111.

See also *Moore v. Ferrell* 2006 WL 2381836 (SD Ala) and *Clark v. Johnson* 2000 WL 1568337 (SD Ala) for similar reasoning that an officer leaving his post to not alone constitute deliberate indifference.

## II. The Defendants were not indifferent to Plaintiff's serious medical needs.

The Plaintiff alleges that while he was in the HCU receiving medical attention, Warden Thomas denied or delayed prompt medical treatment. Plaintiff's body chart shows he was received in the HCU at 7:40 p.m. and was discharged to be sent to Baptist Medical Center in Montgomery. Warden Levan Thomas testified that he arrived at SCF at 8:14 p.m. to check on the severity of the inmates' wounds and that the medical

personnel determined that the Plaintiff would need to be transported to Baptist Medical

Center by ADOC transport van as the wounds were not so severe as to necessitate an

ambulance.  The transport van departed at approximately 8:58 p.m.  Plaintiff claims while

in the HCU, he was bleeding tremendously but the body chart states, "drainage at present

1cm laceration at right elbow = blood flow at slow rate."

> Delay in access to medical attention can violate the Eighth
> Amendment, *Estelle*, 429 U.S. at 104-05, 97 S.Ct. at 291, when it
> is "tantamount to 'unnecessary and wanton infliction of pain,'"
> *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir.) (per curiam)
> (quoting *Estelle*, 429 U.S. at 104, 97 S.Ct. at 291), *cert. denied*,
> 496 U.S. 928, 110 S.Ct. 2624, 110 L.Ed.2d 645 (1990). Cases
> stating a constitutional claim for immediate or emergency medical
> attention have concerned medical needs that are obvious even to a
> layperson because they involve life-threatening conditions or
> situations where it is apparent that delay would detrimentally
> exacerbate the medical problem.  In contrast, delay or even denial
> of medical treatment for superficial, nonserious physical conditions
> does not constitute an Eighth Amendment violation. The
> "seriousness" of an inmate's medical needs also may be decided by
> reference to the *effect* of delay in treatment. *Gaudreault*, 923 F.2d
> at 208; *Monmouth County*, 834 F.2d at 347. Where the delay
> results in an inmate's suffering "a life-long handicap or permanent
> loss, the medical need is considered serious." *Id.* An inmate who
> complains that delay in medical treatment rose to a constitutional
> violation must place verifying medical evidence in the record to
> establish the detrimental effect of delay in medical treatment to
> succeed. Further, we have held that "tolerable length of delay in
> providing medical attention depends on the *nature* of the medical
> need and the *reason* for the *delay*." *Harris v. Coweta County*, 21
> F.3d 388, 393-94 (11Th Cir. 1994) (emphasis added). Consequently,
> delay in medical treatment must be interpreted in the context of the
> seriousness of the medical need, deciding whether the delay
> worsened the medical condition, and considering the reason for
> delay.  (Footnotes omitted)
>
> *Hill v. Dekalb Regional Youth Dentention Center*, 40 F.3d 1176,
> 1187-1189 (11Th Cir 1994)

The Warden's affidavit clearly shows the Plaintiff was receiving medical

evaluation and treatment in the HCU and was transported by ADOC transport van to

Baptist Medical Center. Warden Thomas denies he in any way delayed inmate Monroe's immediate medical attention and Plaintiff has clearly not placed any medical evidence in the record.

## II. Defendants are immune from suit.

Plaintiff's suit is barred under the doctrines of discretionary function and qualified immunity. Qualified immunity protects government officials from civil trials and liability when their conduct "violates no clearly established statutory or constitutional rights of which a reasonable person would have known." *Wilson v. Blankenship*, 163 F.3d 1284, 1288 (11th Cir. 1998), quoting *Lassiter v. Alabama A&M Univ., Bd. of Trustees*, 28 F.3d 1146, 1149 (11th Cir. 1994). The defendants are also entitled to discretionary-function immunity, which protects the discretionary acts of state employees from suit unless a plaintiff can show the employee acted maliciously or in bad faith. *Taylor v. Adams*, 221 F.3d 1254, 1261 (11th Cir. 2000). As Monroe has not shown that the defendants' acts violated clearly established law, or were done in bad faith, they are immune from suit.

To the extent that the plaintiff asserts his claims against the defendants in their official capacities, the claims must fail because the defendants are entitled to immunity via the Eleventh Amendment. The Eleventh Amendment to the United States Constitution provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state." The Amendment not only bars suits against a state by citizens of another state, but it also bars suits against a state by that state's own citizens. See *Edelman v. Jordan*, 415 U.S. at 663, 94 S. Ct at 1347 and *Hans v. Louisiana*, 134 U.S. 1, 13-15, 10 S. Ct. 504, 33

L.Ed. 842 (1890). All defendants were acting within the scope of their official duties in this instance on behalf of the State of Alabama. The State of Alabama has not waived its immunity or consented to the filing of such a suit. The defendants are absolutely immune from suit in this instance. U.S. Const. amend. 11; Art. I, § 14, ALA. Const. (The State of Alabama shall never be made a defendant in any court of law or equity); see also *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (a claim against a state official in his official capacity is a claim against the state).

## CONCLUSION

There are no genuine issues of material fact, and the Defendants are entitled to judgment as a matter of law. WHEREFORE, the Defendants respectfully request that this Honorable Court dismiss the claims against them.

Respectfully submitted,

TROY KING
Attorney General

/s/ *Jeffery H. Long*
Jeffery H. Long
Assistant Attorney General

ADDRESS OF COUNSEL:

Office of the Attorney General
11 South Union Street
Montgomery, AL 36130
(334) 242-7555
(334) 242-2433

## CERTIFICATE OF SERVICE

I hereby certify that I have, this the 18th day of December, 2006, electronically filed the foregoing with the Clerk of Court using the CM/ECF system and served a copy of the foregoing upon the Plaintiff, by placing same in the United States Mail, postage prepaid and properly addressed as follows:

James K. Monroe, AIS 167435
Staton Correctional Facility
POB 56
Elmore, AL 36025

/s/ *Jeffery H. Long*
Jeffery H. Long

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

JAMES MONROE #167435                )
                                    )
              Plaintiff,            )
                                    )
v.                                  )  CIVIL ACTION NO. 2:06-CV-928-MEF
                                    )
OFFICER L. THOMAS, et.al.           )
                                    )
                                    )
              Defendants,           )

## A F F I D A V I T

**State of Alabama**     :

**Elmore County**        :

     Before me, the undersigned authority, a Notary Public in and for said County and

State of Alabama at Large, personally appeared Annie Latimore, who being known to me

and being by me first duly sworn, deposes and says on oath as follows:

     My name is Annie Latimore.  I hereby certify and affirm that I am the Alternate

Custodian of Records at Staton Correctional Facility, P.O. Box 56, Elmore, Alabama

36025.  I am over twenty-one years of age and am competent to testify to the matters

stated herein

     The attached ***State of Alabama Department of Corrections Institutional Incident***

***Report***  number SCF-06-0800 consisting of nineteen pages, is true, and exact and correct

photocopies of documents maintained here in the institutional files.

     I further certify and affirm that said documents are maintained in the usual and

ordinary course of business at Staton Correctional Facility and that said documents



And entries therein were made reasonably near the time that such acts, events and

transactions referred to therein are said to have occurred.

_Annie Latimore_
ANNIE LATIMORE

SWORN TO and SUBSCRIBED before me this ____ day of December 2006.

NOTARY PUBLIC

4/4/2010
My Commission Expires:

STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS

# INCIDENT REPORT

| 1. Institution:<br>Staton Correctional Facility | 2. Date:<br>09-04-06 | 3. Time:<br>7:15 p.m. | 4. Incident Number:<br>SCF-06- 0800 | Class Code:<br>B |
|---|---|---|---|---|
| 5. Location Where Incident Occurred:<br>B-Dormitory Dayroom | | 6. Type of Incident: #52 Unauthorized Possession Of A Weapon Or A Device That Could Be Used As A Weapon, #31 Assault On Another Inmate | | |
| 7. Time Incident Reported:<br>7:15 p.m. | | 8. Who Received Report:<br>Sgt. C. T. Jenkins | | |

| 9. Victims: | Name | | | | AIS |
|---|---|---|---|---|---|
| a. | Vincent Crim | | | No. | B/167807 |
| b. | Michael Grant | | | No. | B/152447 |
| c. | James Monroe | | | No. | B/167435 |

| 10. Suspects: | Name | | AIS | 11. Witnesses: | Name | | AIS |
|---|---|---|---|---|---|---|---|
| a. | Andre Jolly | No. | 128255 | a. | Grayling Davis | No. | COI |
| b. | | No. | | b. | Quincy Walton | No. | COI |
| c. | | No. | | c. | | No. | |
| d. | | No. | | d. | | No. | |
| e. | | No. | | e. | | No. | |
| | | | | f. | | No. | |
| | | | | g. | | No. | |

PHYSICAL EVIDENCE:

12. Type of Evidence:

Prison Made Knife

13. Description of Evidence:

One (1) Prison Made Knife, approximately ten (10) inches in length, with a white colored cloth handle

14. Chain of Evidence:

a   Inmate Andre Jolly B/128255
b   Officer Quincy Walton
c   Investigator ED Sasser, I&I Division
d
e

15. Narrative Summary:

On September 4, 2006 Officer Louis Thomas was assigned duty as the Staton's Second Shift B-Dormitory cubicle Officer. At approximately 7:15 p.m. Officer Thomas was walking out of B-Dormitory bay #1. Officer Thomas observed inmates Andre Jolly B/128255 and Vincent Crim B/167807 struggling with each other in the corner of B-Dormitory dayroom near the front entrance door. Officer Thomas called a code blue for B-Dormitory. Sgt. C. T. Jenkins, Staton Second Shift Assistant Shift Commander, Officer Grayling Davis, Officer Quincy Walton, and Officer James Cannon reported to B-Dormitory. Inmate Jolly had a prison made knife in his right hand. Officer Davis grabbed inmate Jolly by the arms and placed inmate Jolly against the wall, as Officer Cannon attempted to pull inmate Crim away from inmate Jolly. Sgt. Jenkins placed inmate Jolly in a headlock and quickly moved inmate Jolly outside of B-Dormitory. Sgt. Jenkins placed inmate Jolly on the sidewalk, as Officer Walton removed the knife from inmate Jolly's hand. Officer Cedric Weathers placed handcuffs on inmate Jolly and assisted inmate Jolly up from the sidewalk. Officer Weathers escorted inmate Jolly to the Shift Commander's Officer as Officer Cannon, Officer Davis, Officer Larry Addison, Officer Charles Jones, Officer Clyde Kaufman, and Officer Malcom Jacobs began to put the inmates in B-Dormitory back in their assigned bays. Officer Cannon escorted inmate Michael Grant B/152447 outside of B-Dormitory. Inmate Grant was bleeding from the neck and upper arm area. Officer Jones escorted inmate Crim outside of B-Dormitory. Inmate Crim was bleeding from a puncture wound to the right hand. Officer Jacobs escorted inmate James Monroe B/167435 outside of B-Dormitory. Inmate Monroe was bleeding from a stab wound to the back and right elbow. Inmates Crim, Grant, and Monroe were escorted to Staton Health Care Unit for a Medical evaluation. (See attached medical reports).

ADOC Form 302-A – June 1, 2005

STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS

## INCIDENT REPORT/DUTY OFFICER REPORT
## CONTINUATION

| Institution: | Incident Number: | Class Code: |
|---|---|---|
| **Staton Correctional Facility** | **SCF 06-0800** | **B** |
| Date: | Type of Incident: #52 Unauthorized Possession Of A Weapon Or | |
| **09-04-06** | A Device That Could Be Used As A Weapon, #31 Assault On Another Inmate | |

Narrative Summary (Continued) Page No.

At approximately 7:30 p.m. Sgt. Jenkins notified Warden III Leon Forniss and Warden II Levan Thomas of the aforementioned incident. At approximately 7:40 p.m. Sgt. Jenkins notified I&I Investigator Ed Sasser. At approximately 7:59 p.m. Captain George Edwards entered the institution. At approximately 8:14 p.m. Warden Thomas entered the institution. At approximately 8:23 p.m. I&I Investigator Sasser entered the institution. Upon further evaluation it was revealed that inmate Crim and inmate Monroe would need to be transported to Baptist Medical Center in Montgomery, AL by D.O.C. transport van. Inmate Grant received a pressure dressing to his neck and arm area. Inmate Grant was placed in Staton's Medical Observation Unit to be further observed and evaluated by the Medical Doctor. Upon further investigation of this incident it was revealed that inmate Jolly stabbed inmates Grant, Monroe, and Crim. When questioned by Sgt. Jenkins inmate Jolly admitted to Sgt. Jenkins that he had stabbed inmates Grant, Monroe, and Crim. Inmate Jolly indicated that he was being bothered by inmates Grant, Monroe, and Crim, thus causing him to stab inmates Crim, Grant, and Monroe. At approximately 8:30 p.m. Investigator Sasser interviewed inmate Monroe concerning the incident. At approximately 8:42 p.m. Investigator Sasser interviewed inmate Crim concerning the incident. At approximately 8:45 p.m. Investigator Sasser interviewed inmate Grant concerning the incident. At approximately 8:55 p.m. Investigator Sasser entered B-Dormitory and photographed the crime scene. At approximately 8:58 p.m. Officer Weathers and Officer Jacobs left Staton CF with inmates Crim and Monroe enroute to Baptist South Medical Center. At approximately 9:15 p.m. Warden Thomas notified Commissioner Greg Lovelace of the aforementioned incident. At approximately 9:44 p.m. Investigator Sasser exited Staton CF with an evidence bag containing the Knife that inmate Jolly used to stab the aforementioned inmates. Attached to the bag was a chain of evidence form. Inmate Jolly was placed in Staton's Holding cell #1 pending disciplinary action for rule violation #52 Possession Of A Weapon Or A Device That Could Be Used As A Weapon, and #31 Assault On Another Inmate. No further action was taken at this time.

_Officer Louis Thomas_

ADOC Form 302-B – June 1, 2005

STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS

# INCIDENT REPORT/DUTY OFFICER REPORT
## CONTINUATION

| Institution: | Incident Number: | Class Code: |
|---|---|---|
| **Staton Correctional Facility** | **SCF 06-0800** | **B** |
| Date:<br>09/04/06 | Type of Incident: *31, Assault on another inmate, 52, Unauthorized possession of weapon or device that could be used as weapon* | |

Narrative Summary (Continued) Page No.

## STATEMENT

On September 4, 2006, at approximately 7:15pm, I responded to a Code Blue called by Officer Louis Thomas, Staton Second Shift B Dormitory Cubicle Officer. When I arrived to the B Dormitory dayroom area, I observed inmate Andre Jolly, BM/128255, with what appeared to be a prison made knife in his right hand. Inmate Jolly's right arm was locked between the left arm and body of inmate Vincent Crim, BM/167801. I took hold of inmate Jolly's right arm to ensure inmate Jolly could not continue to stab anyone. Officer Quincy Walton took a prison made knife, approximately ten (10) inches long with a white cloth handle, from the right hand of inmate Jolly. Inmate Jolly was placed on the sidewalk, between A and B Dormitories, by Sgt. C.T. Jenkins, Staton Second Shift Assistant Commander. Inmate Jolly was handcuffed by Officer Cedric Weathers. Inmate Jolly was escorted to the Staton Shift Commander's Office. On September 4, 2006, I took no further action in regard to the aforementioned incident.

OFFICER GRAYLING DAVIS

*ADOC Form 302-B – June 1, 2005*

STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS

## INCIDENT REPORT/DUTY OFFICER REPORT
## CONTINUATION

| Institution:<br>**Staton Correctional Facility** | Incident Number:<br>**SCF 06- 0800** | Class Code:<br>**B** |
|---|---|---|
| Date:<br>**09/04/06** | | Type of Incident:31 Assault on another inmate, 52, Unauthorized<br>possession of weapon or device that could be used as a weapon |

Narrative Summary (Continued) Page No.

### STATEMENT

On September 4, 2006, I was assigned duty as the Staton Second Shift A Dormitory Cubicle Officer. As I assisted with institutional lockdown, Officer Louis Thomas, Staton Second Shift B Dormitory Cubicle Officer, called a Code Blue for B Dormitory. I observed inmate Andre Jolly, BM/128255, with a prison made knife in his right hand. I grabbed inmate Jolly's right wrist and squeezed it until inmate Jolly dropped the above-mentioned prison made knife. The prison made knife was placed in the middle drawer of the Shift Commander's desk until the knife was observed by Investigator Ed Sasser, I&I Division. The prison made knife, after being observed by Mr. Sasser was placed in a manila envelope and the said manila envelope was sealed with red colored evidence tape. At approximately 9:40pm, Mr. Sasser took the manila envelope with the prison made knife therein and departed Staton Correctional Facility. Disciplinary action will be initiated against inmate Jolly for rule violation #52, Unauthorized possession of weapon or device that could be used as a weapon. Nothing further.

OFFICER QUINCY WALTON

ADOC Form 302-B – June 1, 2005

## DRAPER CORRECTIONAL FACILITY
## INMATE DETENTION NOTIFICATION

FROM: _Sgt. C.T. Jenkins, 2nd Shift_ TEAM LEADER

TO: INMATE _Andre Jolly_ AIS# _BM/128255_ DOB: _6-7-62_

REF: **ADMINISTRATIVE SEGREGATION**

You are placed in Administrative Segregation for:

_Investigation, pending disciplinary action for violations of Rule #31/
Assault on another inmate and Rule #52 Unauthorized possession of weapon
or device that could be used as a weapon_

Circumstances are as follows (be specific):

_On 9-4-06 at approximately 7:15 pm, inmate Jolly was in possession of a
prison made knife. Said knife was utilized by inmate Jolly to stab inmates
Vincent Crim/James Monroe/Michael Grant. Inmates Crim/Monroe were_

This is authorized by _Warden Leon Forniss_ this _4_ day of _September 2006_
Your confinement in Segregation is for a period of not more than seventy-two (72) hours. Prior to 72 hours
confinement, you will be released, served a PR (Progress Review), disciplinary notice or extended. The 72
Extensions must be authorized by the Assistant Warden for further investigation time when justified. The 72
hour confinement excludes weekends and holidays. You may also be confined in Segregation by order of
I & I for investigation, criminal prosecution, etc.
While in Administrative Segregation, you will be seen by the Shift Supervisor, a nurse, and officer's daily.
You will be seen by a medical doctor upon request from the nurse. You **will not** be permitted television (**No
exceptions**) personal newspapers, books, or magazines. You will be given a verbal and written orientation
concerning policy and procedures of the Segregation Unit at the time you enter the Unit. You will be
provided a healthy environment and personal hygiene items (soap, towel, comb, toothbrush and face cloth).
You are not allowed to keep personal items. Clothing and bedding will be issued by the Segregation Unit.
Reading materials allowed are one (1) religious book, one (1) additional book or magazine from the
Institutional Library and one (1) Alcohol Anonymous and/or Narcotic Anonymous book. You may receive
one (1) visit per month by person(s) on your approved visiting list. Request for visits must be sent to the
Assistant Warden. You will be permitted one (1) phone call per month by request to the Assistance Warden.
Canteen privileges will be authorized on a limited basis. Your signature below indicates that you have
collected and secured all of your property from population, and acknowledge receipt of the detention notice

_transported, via state van, to Baptist South Hospital_

INMATE SIGNATURE _Andre Jolly_ AIS # _128255_

DATE: _9-4-06_ TIME: _845 PM_

WITNESS: _Penton Ashworth COI_

* Inmate's property has been collected and placed into the custody of the Segregation Unit.

# Alabama Department of Corrections
## Duty Officer Report

Class Code __B_____

Type of Incident: **Assault On Another Inmate/ Unauthorized Possession Of A Weapon**

Institution: **Staton CF**

Victim(s):

| | | | | | | |
|---|---|---|---|---|---|---|
| Vincent Crim | (V-1) | AIS# | 167807 | R/S | B/M | DOB 03-02-69 |
| Michael Grant | (V-2) | AIS# | 152447 | R/S | B/M | DOB 12-16-69 |
| James Monroe | (V-3) | AIS# | 167435 | R/S | B/M | DOB 09-08-67 |

Suspects(s):

| | | | | | | |
|---|---|---|---|---|---|---|
| Andre Jolly | (S) | AIS# | 128255 | R/S | B/M | DOB 06-07-62 |
| | | AIS# | | R/S | | DOB |

Sentenced From: **V-1 Chambers/V-2 Montgomery** **V-3 Fayette/S-Jefferson**

Date of Sentence: **(V-1) 4-08-04/(V-2) 1-29-97** **(V-3) 5-17-04/(S)-5-19-89**

Offense(s): **(V-1) Escape I/(V-2) Robbery I** **(V-3) Forgery II/(S) Murder Attempt**

Length of Sentence: **(V-1) 4yrs/ (V-2) Life** **(V-3) 15yrs/(S) 75yrs**

Minimum Release Date: **(V1)5-14-2008/(V2) 00/00/0000/ (V3) 03-22-2009/ (S) 03-03-2262**

Date: **9-04-06**    Time: **7:15 pm**    Location: **B-Dormitory Dayroom**

Brief Narrative:
On 09-04-06 at approximately 7:15 pm Officer Louis Thomas called a code blue in B-Dorm. Officer Grayling Davis and Officer James Cannon arrived in B-Dormitory and observed inmate Vincent Crim B/167807 holding inmate Andre Jolly B/128255 by the arm and yelling he's got a knife. Officer Davis grabbed inmate Jolly by the arms placing inmate Jolly against the wall, as Officer Cannon attempted to pull inmate Crim away. Sgt. C. T. Jenkins also arrived on the scene placing inmate Jolly in a head lock, and quickly moving inmate Jolly outside of B-Dormitory. Sgt. Jenkins placed inmate Jolly down on the sidewalk in between A and B Dormitories. Officer Quincy Walton retrieved a prison made knife from inmate Jolly. Officer Cedric Weathers placed handcuffs on inmate Jolly and assisted inmate Jolly up from the sidewalk. Officer Weathers escorted inmate Jolly to the Shift Commander's Office, as Officer Cannon, Officer Davis, Officer Larry Addison, Officer Charles Jones, Officer Clyde Kaufman, and Officer Malcom Jacobs began to put the inmates in B-Dormitory back in their assigned bays. Officer Cannon escorted inmate Michael Grant B/152447 outside of B-Dormitory. Inmate Grant was bleeding from the neck and upper arm area. Officer Jones escorted inmate Crim outside B-Dormitory. Inmate Crim was bleeding from a puncture wound to the right hand. Officer Jacobs escorted inmate James Monroe B/167435 outside B-Dormitory. Inmate Monroe was bleeding from a stab wound to the back and right elbow. Inmates Crim, Monroe, and Grant were all escorted to Staton Health Care Unit for a medical evaluation. Upon medical evaluation it was revealed that inmate Crim and inmate Monroe would need to be transported by D.O.C. transport van to Baptist South Medical Center in Montgomery, Al. Inmate Grant received a pressure dressing to his neck and upper arm and area and was placed on Staton's Medical Observation Unit to be further observed and evaluated by the Medical Doctor. Upon questioning of inmate Jolly, he admitted that he had stabbed inmate Monroe, inmate Grant, and inmate Crim. Inmate Jolly stated that he felt threatened by the aforementioned inmates and felt that was what he had to do. Inmate Jolly received a medical examination and was placed in Staton's holding cell #1 pending disciplinary action for rule violation # 31 Assault On Another Inmate, and # 52 Unauthorized Possession Of A Weapon.

(Use ADOC Form 302-B for Continuation of narrative)

SCF-06-0800

| | | | |
|---|---|---|---|
| Official Reporting: Sgt. C. T. Jenkins | Date: 09-04-06 | Time: 10:00 |
| Receiver of Report: PCO1 Mann | | |
| Deputy Comm. of Operations: Greg Lovelace/email | Date: 09/05/06 | Time: AM |
| Inst. Coordinator: Roy Hightower/email | Date: 09/05/06 | Time: AM |
| Investigations: Ed Sasser/email | Date: 09/05/06 | Time: AM |
| Public Information Officer: Brian Corbett/email | Date: 09/05/06 | Time: AM |

ADOC Form 302-C – June 1, 2005

# STATON CORRECTIONAL FACILITY

## CHAIN OF EVIDENCE FORM

DATE: 9-4-06          TIME: 7:15 PM  CASE #: _____

Type of Evidence: Prison made Knife

Description of Evidence: One(1) prison made Knife, approximately (10) inches long, with A handle/grip of white colored cloth

Location Where Evidence Found: Right hand of Inmate Jolly ; in B-dormitory Dayroom

Check One:    [X] Inmate         [ ] Employee
              [ ] Visitor        [ ] Other

Found on: Inmate Andre Jolly          Number: BM/128255
          (Name of Person, if applicable)        (If applicable)

Evidence Discovered By:

Quincy WALTON COI              Quincy Walton COI
(Full name – type or print)      (Full name – signature)

Evidence to:

_____    _____    _____
(Signature)            (Date)        (Time)

_____    _____    _____
(Signature)            (Date)        (Time)

_____    _____    _____
(Signature)            (Date)        (Time)

Fd Sasser              9-4-06        9:40 PM
Investigator – Signature)   (Date)        (Time)

Final Disposition:

_____    _____    _____
Method of Disposal-burn, flush, other)  (Date)  (Time)

_____    _____
(Disposing Official – signature)   (Witness – signature)

STATON CORRECTIONAL FACILITY
CELL BLOCK INSPECTION SHEET

TIME: _8:55 PM_  DATE: _9/4/06_

INMATE: _Andra Jolly_  AIS #: _128255_  CELL #: _1_

INSPECTING OFFICERS'S SIGNATURE: _Penton Ashworth COI_

WALLS: _✓_____

FLOORS: _✓_____

BED: _✓_____

COMMODE: _____

LAVATORY: _✓_____

OTHER ITEMS: _____

_____

I certify that my cell ____1____ has been inspected by Officer _Penton Ashworth_

on the __4__ day of _September_ 200_6_ and the above noted defects were found.
I am responsible for keeping my cell in the same condition outlined.

_Andra Jolly_
INMATE'S SIGNATURE

I certify that I have explained the rules and regulations to the above named inmate and have completely
searched the cell for any contraband and there was no contraband found on this date:

_9/4/06_   _8:55 PM_
DATE AND TIME CELL WAS SEARCHED

_Penton Ashworth COI_
Officer's Signature

| | | | |
|---|---|---|---|
| | Blanket | ✓ | Toothbrush |
| | Sheets | ✓ | Tube of Toothpaste |
| | Pair Socks | ✓ | Comb |
| | Pair of Shoes | ✓ | Wash Cloth |
| | Under Shorts | ✓ | Bar of Soap |
| | Under Shirt | ✓ | Towel |
| | Pillow | ✓ | Shirt |
| | Pillow Case | ✓ | Pants |
| ✓ | Mattress | ✓ | Jacket (weather dictates) |

Issuing Officer: _Penton Ashworth COI_

Processing Officer: _Penton Ashworth COI_

# EMERGENCY



| ADMISSION DATE | TIME | ORIGINATING FACILITY _Staton_ | ☐ SICK CALL ☐ EMERGENCY |
|---|---|---|---|
| 5/4/06 | PM AM/PM | ☐ SIR ☐ PDL ☐ ESCAPEE ☐ | ☐ OUTPATIENT |

ALLERGIES _NKA_

CONDITION ON ADMISSION
☐ GOOD ☑ FAIR ☐ POOR ☐ SHOCK ☐ HEMORRHAGE ☐ COMA

VITAL SIGNS: TEMP _99.8_ ORAL/RECTAL   RESP. _18_   PULSE _111_   B/P _148/78_   RECHECK IF SYSTOLIC <100> 50 ___/___

NATURE OF INJURY OR ILLNESS

S- Body Chart per DOC

O- Nox3 Skin w/o ...
C/o pain ...
no obvious ...

PHYSICAL EXAMINATION

ABRASION /// CONTUSION # BURN xx FRACTURE Z LACERATION / ____ SUTURES

PROFILE RIGHT OR LEFT

RIGHT OR LEFT

| ORDERS / MEDICATIONS / IV FLUIDS | TIME | BY |
|---|---|---|

DIAGNOSIS

INSTRUCTIONS TO PATIENT

| DISCHARGE DATE | TIME | RELEASE / TRANSFERRED TO | CONDITION ON DISCHARGE |
|---|---|---|---|
| | AM/PM | ☐ DOC ☐ AMBULANCE ☐ | ☐ SATISFACTORY ☐ POOR ☐ FAIR ☐ CRITICAL |

| NURSE'S SIGNATURE | DATE | PHYSICIAN'S SIGNATURE | DATE | CONSULTATION |
|---|---|---|---|---|

| INMATE NAME (LAST, FIRST, MIDDLE) | DOC# | DOB | R/S | FAC. |
|---|---|---|---|---|
| | 128055 | 07/62 | B/n | Sec |



**PHS**
PRISON
HEALTH
SERVICES
INCORPORATED

# EMERGENCY

| ADMISSION DATE | | TIME | ORIGINATING FACILITY _____ SRC | | ☐ SICK CALL ☐ EMERGENCY |
|---|---|---|---|---|---|
| / / | | AM PM | ☐ SIR ☐ PDL ☐ ESCAPEE ☐ _____ | | ☐ OUTPATIENT |

| ALLERGIES   NKDA | CONDITION ON ADMISSION |
|---|---|
| | ☐ GOOD ☑ FAIR ☐ POOR ☐ SHOCK ☐ HEMORRHAGE ☐ COMA |

| VITAL SIGNS: TEMP ____ | ORAL RECTAL | RESP. _____ | PULSE _____ | B/P __/__ | RECHECK IF SYSTOLIC <100> 50  __/__ |
|---|---|---|---|---|---|

| NATURE OF INJURY OR ILLNESS | | ABRASION /// | CONTUSION # | BURN xx xx | FRACTURE Z Z | LACERATION / _____ SUTURES |
|---|---|---|---|---|---|---|

S - "I got stabbed in the neck."

O - A/O x3, w/o ever and non
labored, laceration (2cm) to ℞
side of neck, no gava &
present

PHYSICAL EXAMINATION

A - laceration in ℞ lat

P - Admit to med



PROFILE RIGHT OR LEFT

RIGHT OR LEFT

| ORDERS / MEDICATIONS / IV FLUIDS | TIME | BY |
|---|---|---|
| Tetanus 0.5cc - in 100 T Syr | | |
| X plaiis ? | | |

| DIAGNOSIS |
|---|

| INSTRUCTIONS TO PATIENT |
|---|

| DISCHARGE DATE | | TIME | RELEASE / TRANSFERRED TO | ☐ DOC | CONDITION ON DISCHARGE |
|---|---|---|---|---|---|
| / / | | AM PM | | ☐ AMBULANCE ☐ | ☐ SATISFACTORY ☐ POOR ☐ FAIR ☐ CRITICAL |

| NURSE'S SIGNATURE | DATE | PHYSICIAN'S SIGNATURE | DATE | CONSULTATION |
|---|---|---|---|---|

| INMATE NAME (LAST, FIRST, MIDDLE) | DOC# | DOB | R/S | FAC. |
|---|---|---|---|---|

# EMERGENCY



| ADMISSION DATE | TIME | ORIGINATING FACILITY _____ | ☐ SICK CALL   ☐ EMERGENCY |
|---|---|---|---|
|  | AM PM | ☐ SIR  ☐ PDL  ☐ ESCAPEE ☐_____ | ☐ OUTPATIENT |

**ALLERGIES**

**CONDITION ON ADMISSION**
☐ GOOD   ☐ FAIR   ☐ POOR   ☐ SHOCK   ☐ HEMORRHAGE   ☐ COMA

VITAL SIGNS: TEMP _____   ORAL RECTAL   RESP. _____   PULSE _____   B/P _____   RECHECK IF SYSTOLIC <100> 50 _____

**NATURE OF INJURY OR ILLNESS**

| ABRASION /// | CONTUSION # | BURN xx xx | FRACTURE Z Z | LACERATION / _____ SUTURES |
|---|---|---|---|---|

PROFILE RIGHT OR LEFT

RIGHT OR LEFT

**PHYSICAL EXAMINATION**

| ORDERS / MEDICATIONS / IV FLUIDS | TIME | BY |
|---|---|---|

**DIAGNOSIS**

*INSTRUCTIONS TO PATIENT*

| DISCHARGE DATE | TIME AM PM | RELEASE / TRANSFERRED TO  ☐ DOC  ☐ AMBULANCE  ☐ | CONDITION ON DISCHARGE  ☐ SATISFACTORY  ☐ POOR  ☐ FAIR  ☐ CRITICAL |
|---|---|---|---|
| NURSE'S SIGNATURE | DATE | PHYSICIAN'S SIGNATURE    DATE | CONSULTATION |

| INMATE NAME (LAST, FIRST, MIDDLE) | DOC# | DOB | R/S | FAC. |
|---|---|---|---|---|

SCF-06-0800



# EMERGENCY

Status

OL5471

| ADMISSION DATE | TIME | ORIGINATING FACILITY | | |
|---|---|---|---|---|
| 9/4/06 | 740 AM PM | □ SIR □ POL □ ESCAPEE □ | □ SICK CALL ☑ EMERGENCY | ☑ OUTPATIENT |

| ALLERGIES NKA | CONDITION ON ADMISSION |
|---|---|
| | □ GOOD □ FAIR □ POOR □ SHOCK □ HEMORRHAGE □ COMA |

| VITAL SIGNS: TEMP 98° | ORAL RECTAL | RESP. 20 | PULSE 96 | BP 160, 96 | RECHECK IF SYSTOLIC <100> 50 |
|---|---|---|---|---|---|

| NATURE OF INJURY OR ILLNESS | ABRASION /// | CONTUSION # | BURN xx xx | FRACTURE Z Z | LACERATION / SUTURES |
|---|---|---|---|---|---|

S- I was quiet sitting watching TV when somebody "inned" and started stabbing people.

O- 0033. Pt. was Reg. chair Vitals 2.5 cm stab wound on ® side of spine below shoulder blade. @ pres at present 1 cm laceration ® @ the elbow & check for @ elbow site. Pt bleeding when asked to take a deep

**PHYSICAL EXAMINATION**

breath to check lung sounds. Pain continuous.

A- Alert, pain this wound

P- Reported to Dr Corbier

To be sent to Bapt. S.ER via van

(body diagrams with notations: "2.5 cm" near chest, "1 cm" on hands)

PROFILE RIGHT OR LEFT

RIGHT OR LEFT

| ORDERS / MEDICATIONS / IV FLUIDS | TIME | BY |
|---|---|---|
| | | |
| | | |
| | | |
| | | |

**DIAGNOSIS**

**INSTRUCTIONS TO PATIENT**

| DISCHARGE DATE | TIME | RELEASE / TRANSFERRED TO | CONDITION ON DISCHARGE | |
|---|---|---|---|---|
| 9/4/06 | AM PM | ☑ DOC □ AMBULANCE □ | □ SATISFACTORY □ FAIR | □ POOR □ CRITICAL |

| NURSE'S SIGNATURE | DATE | PHYSICIAN'S SIGNATURE | DATE | CONSULTATION |
|---|---|---|---|---|

| INMATE NAME (LAST, FIRST, MIDDLE) | DOC# | DOB | R/S | FAC. |
|---|---|---|---|---|
| MONROE, James | 161435 | 9/8/67 | B/m | Sec |

**PHS**
PRISON
HEALTH
SERVICES
INCORPORATED

# EMERGENCY

| ADMISSION DATE _____ | TIME _____ AM PM | ORIGINATING FACILITY _____ ☐ SIR  ☐ PDL  ☐ ESCAPEE  ☐ _____ | ☐ SICK CALL  ☐ EMERGENCY ☐ OUTPATIENT |
|---|---|---|---|

| ALLERGIES | CONDITION ON ADMISSION ☐ GOOD  ☐ FAIR  ☐ POOR  ☐ SHOCK  ☐ HEMORRHAGE  ☐ COMA |
|---|---|

VITAL SIGNS: TEMP _____ ORAL RECTAL   RESP. _____   PULSE _____ B/P _____   RECHECK IF SYSTOLIC <100> 50 _____

| NATURE OF INJURY OR ILLNESS | ABRASION /// | CONTUSION # | BURN xx xx | FRACTURE z z | LACERATION / _____ SUTURES |
|---|---|---|---|---|---|

NATURE OF INJURY OR ILLNESS
_(handwritten, illegible)_

_(handwritten, illegible)_

PHYSICAL EXAMINATION
_(handwritten, illegible)_

PROFILE RIGHT OR LEFT

RIGHT OR LEFT

| ORDERS / MEDICATIONS / IV FLUIDS | TIME | BY |
|---|---|---|

_(handwritten, illegible) Return to HCU if Problems._

DIAGNOSIS

INSTRUCTIONS TO PATIENT

| DISCHARGE DATE _____ | TIME _____ AM PM | RELEASE / TRANSFERRED TO ☐ DOC ☐ AMBULANCE ☐ | CONDITION ON DISCHARGE ☐ SATISFACTORY  ☐ POOR ☐ FAIR  ☐ CRITICAL |
|---|---|---|---|

| NURSE'S SIGNATURE _____ | DATE _____ | PHYSICIAN'S SIGNATURE _____ | DATE _____ | CONSULTATION |
|---|---|---|---|---|

| INMATE NAME (LAST, FIRST, MIDDLE) _____ | DOC# _____ | DOB _____ | R/S _____ | FAC. _____ |
|---|---|---|---|---|

PHS-MD-70007                           (White – Record Copy, Yellow – Pharmacy Copy)

INSTITUTION: *Staton*

INMATE *Andre Jolly Am 12825*     DATE *9/4/06*

1. BIBLE (1)
2. STATIONARY/STAMPS
3. PENCIL (1)
4. SOCKS - WHITE (6 pr.)
5. UNDERSHIRTS/UNDERWEAR - WHITE (6)
6. HANDKERCHIEFS (6)
7. TOILET ARTICLES - CLEAR, NON-GLASS CONTAINERS
8. LEGAL PAPERS

9. TENNIS SHOES - WHITE (1 pr.)
10. SHOWER SHOES (1 pr.)
11. RELIGIOUS NECKLACE (1) - $25.00 VALUE OR LESS
12. WALLET (1)
13. WRIST WATCH (1) - $25.00 VALUE OR LESS
14. WEDDING BAND (1) - $50.00 VALUE OR LESS
15. RADIO — EARPHONES (1 ea.) - PURCHASED FROM CANTEEN
16. BOOKS (3) - RELIGIOUS, LEGAL OR EDUCATIONAL (APPROVAL BY WARDEN REQUIRED)

## DECLARATION OF VALUE

I UNDERSTAND THAT RELIGIOUS NECKLACES OR WRIST WATCHES VALUED AT MORE THAN $25.00, AND WEDDING BANDS VALUED AT MORE THAN $50.00 ARE UNAUTHORIZED AND MUST BE SENT HOME AT MY EXPENSE WITHIN THIRTY (30) DAYS OR IT WILL BE DONATED TO CHARITY OR DESTROYED. I HEREBY DECLARE THE VALUE OF MY PERSONAL PROPERTY TO BE:

RELIGIOUS NECKLACE $_____     WRIST WATCH $_____     WEDDING BAND $_____

_____ (INMATE SIGNATURE)                                       _____ (WITNESS)

## PROPERTY STORED IN THE RECEIVING AREA:

YOU HAVE THIRTY (30) CALENDAR DAYS FROM THE ABOVE DATE TO DISPOSE OF THE FOLLOWING ITEMS. YOU MAY SEND THE BELOW ITEMS HOME BY VISITORS, MAIL THE ITEMS HOME AT YOUR EXPENSE, OR DONATE THE ITEMS TO CHARITY. IF THESE ITEMS ARE NOT REMOVED IN THIRTY (30) DAYS, THEY WILL BE DESTROYED. BELOW ARE THE ITEMS YOU ARE NOT AUTHORIZED TO KEEP.

(11) T-shirts          (2) pr Boots       (1) sony radio/headphones   Store draw items
(2) pr levi jeans      (1) Bible          (3) box's Metamucil         (1) Blue cup
(3) states pants/shirts (3) KOP           (1) hair brush              (1) ACETonide cream
(8) pr socks           (1) Deodorants     personal/legal mail         (2) Tooth brush holder
(8) underwear          (3) shampoos       (2) belts                   (1) key lock
(3) sweat shirts       (2) lotions        (1) eye glass
(2) caps               (4) soap/dish      (4) Tooth brushes
(5) Towels             (1) hair grease    (1) sun glasses
(2) shower slides      (2) shaving powder

_____ *12825* (INMATE SIGNATURE)          *Penton Ashworth COI* (WITNESS)

*(See reverse side for instructions)*

N795
Rev. 6/9/83

Case 2:06-cv-00928-MEF-TFM    Document 18-2    Filed 12/18/2006    Page 18 of 21

# Facsimile Transmittal

| To: | Ms *DIEM* | Fax: | 334 *567-1538* |
|---|---|---|---|

From: *D. FELLELL*

Re: *Andre Jolly 128258*    Pages:

CC:

☐ Urgent    ☑ For Review    ☐ Please Comment    ☐ Please Reply    ☐ Please Recycle

MENTAL HEALTH SERVICES
PSYCHIATRIC PROGRESS NOTES

| DATE: 9/5/06   TIME: | Behavioral Rating Scale: 0=No problem 5=worst | Today is being |
|---|---|---|
| Target Symptoms | | |
| Depressed mood | | 0 - 1/0 |
| Difficulty coping | | 0 - 1/0 - 1 |
| Anxiety | | 0/0 |
| Homicidal / Suicidal thoughts | | 0/0 |
| Hearing voices / Paranoid ideation | | 0/0 |
| Medication: Im does not want to be on any psychotropic meds | | Informed Consent |

Compliance: Inmate report: ___ 
In addition to the information available above and below, then inmate states:

S: "They were bothering me, misturbating
I could not take it anymore. I stopped
three of them. They are okay, I don't
want to take any medicines & I feel
depressed being in this situation. I don't
want to take any medicines. I never took any
medicines except"

| External Look | NO | YES | |
|---|---|---|---|
| Psychosis | | ✓ | ⊘SI, ⊘HI, ⊘AH, ⊘ delusions, mild sxs of depression noted |
| Behaves Depressed | | ✓ | |
| Self-Injurious Thoughts | | ✓ | Denies |
| Suicidal Intent | | ✓ | Denies ✓ |
| Aggressive | | ✓ | None noted (at present time |
| Seriously Impulsive | | ✓ | None noted |
| Situational Upset | | ✓ | Re: current situation in this dorm |

None at this time from mental health.

ASSESSMENT/Diagnosis (DSM-IV)
   Adjustment d/o c Depressed Mood

PLAN: Im exhibits mild sxs and signs of
adjustment d/o c depressed mood. Im
refuses to be on any psychotropic meds
at this time. Will keep him on mental health
caseload. RTC: 9/5/06  PR. BANERJEE Sanverjee, md #

| Patient's Name (Last, First, Middle) | AIS# | Age | R/S | Code | Institution |
|---|---|---|---|---|---|
| JOLLY, ANDRE | 128258 | 44 | B/M | MH = 1 | STATON |

ADOC Form MH-025 March 2, 2005

*caseload at this time. Will
provide counseling / psychotherapy. Monitor
clinical status closely. Mental health
code # at this time. Continue care.

## INTERDISCIPLINARY PROGRESS NOTES

| DATE | TIME | NOTES | SIGNATURE |
|------|------|-------|-----------|
| 9/4/06 | 10:00am | (S) "Dudes were messing c me in the dorm. I kept going to the shift office & reporting it but it got worse & worse. I've been so frustrated & angry & I just couldn't take it anymore." | |
| | | (O) Mood - frustrated. affect was congruent c mood. denied A/H. thought process was logical. delusions are questionable (persecutory, paranoid). was cooperative & open to share c this writer. | |
| | | (A) alleged complaints of inmates needs to be investigated to R/O delusions & mental illness. denies a history of any type of mental health tx. Ax II ASPD. | |
| | | (P) Will have ADOC investigate incident. Will observe inmate in safe cell. MD to assess. | |
| | | Teresa Foure, Psy.D. | |

| Patient's Name, (Last, First, Middle) | R/S# | Age | R/S | Facility |
|---|---|---|---|---|
| Jolly, Andre | 128258 | 44 | B/M | SCF |

o

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

JAMES K. MONROE #167435          )
                                 )
        Plaintiff,               )
                                 )
     v.                          )     CIVIL ACTION NO.  2:06-CV-928-MEF
                                 )
OFFICER L. THOMAS, et.al.        )
                                 )
        Defendants.              )

## A F F I D A V I T

**State of Alabama**    :

**Elmore County**       :

Before me, the undersigned authority, a Notary Public in and for said County and State of Alabama at Large, personally appeared Levan Thomas, who being known to me and being by me first duly sworn, deposes and says on oath as follows:

My name is Levan Thomas.  I am presently employed as a Correctional Warden II with the Alabama Department of Corrections at Staton Correctional Facility, P.O. Box 56, Elmore, Alabama 36025.  I am over twenty-one years of age and have personal knowledge of the facts set forth below.

I have reviewed the complaint of Inmate James Monroe B/M #167435 and this is my response to his complaint.

In this civil action, Inmate Monroe alleges that Inmate Monroe was denied immediate medical attention by Levan Thomas, Warden II.

On September 4, 2006, Levan Thomas, Warden II received a telephone called at his residence at approximately 7:30 P.M.  Sgt. C.T. Jenkins notified Levan Thomas,



Warden II that there had been a stabbing at Staton Correctional Facility. Sgt Jenkins

further advised that there were three (3) inmates (Vincent Crim B/M #167807,

Michael Grant B/M #152447, and James Monroe B/M #167435), that had been stabbed.

Levan Thomas, Warden II arrived at Staton Correctional Facility at approximately 8:14

P.M. and entered the Health Care Unit to check on the severity of the inmates wounds.

At approximately 8:23 P.M. Investigation and Inspection Investigator Ed Sasser arrived

at Staton Correctional Facility to evaluate and investigate the incident. Upon further

evaluation, it was revealed that Inmate Crim and Inmate Monroe would need to be

transported to Baptist Medical Center in Montgomery, Alabama by ADOC transport van.

It was determined by the medical staff that the severity of the wounds did not require an

ambulance being called to transport the inmates to the hospital. Staton Correctional

Facility transport van departed Staton at approximately 8:58 P.M.

At no time did I deny Inmate James Monroe access to immediate medical

attention.

To my knowledge, the above- related facts are the entirety of my involvement

with Inmate James Monroe concerning the allegations on which his complaint is based.

I deny that I have violated any well-established civil rights of Inmate Monroe.

LEVAN THOMAS

SWORN TO and SUBSCRIBED before me this ___1___ day of December  2006.

NOTARY PUBLIC

My Commission Expires:

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

JAMES K. MONROE #167435        )
                               )
        Plaintiff,             )
                               )
v.                             )   CIVIL ACTION NO.  2:06-CV-928-MEF
                               )
OFFICER L. THOMAS, et.al.      )
                               )
        Defendants.            )

## A F F I D A V I T

**State of Alabama**     :

**Elmore County**        :

Before me, the undersigned authority, a Notary Public in and for said County and
State of Alabama at Large, personally appeared Louis Thomas, who being known to me
and being by me first duly sworn, deposes and says on oath as follows:

My name is Louis Thomas.  I am presently employed as a Correctional Officer II
with the Alabama Department of Corrections at Staton Correctional Facility, P.O. Box
56, Elmore, Alabama 36025.  I am over twenty-one years of age and have personal
knowledge of the facts set forth below.

I have reviewed the complaint of Inmate James Monroe B/M #167435 and this is
my response to his complaint.

In this civil action, Inmate Monroe alleges that there was not an officer in the
Dormitory when the incident took place.

On September 4, 2006, Officer Louis Thomas was assigned as the Second Shift
B- Dormitory Cubicle Officer.  At approximately 7:15 P.M., Officer L. Thomas was



making rounds in Bay #1 when Officer Thomas returned to the Dayroom and observed

inmates struggling.  Officer L. Thomas immediately called a Code Blue (Inmates

Fighting) in B-Dormitory.

To my knowledge, the above- related facts are the entirety of my involvement

with Inmate James Monroe concerning the allegations on which his complaint is based.

I deny that I have violated any well-established civil rights of Inmate Monroe.


_____
LOUIS THOMAS


SWORN TO and SUBSCRIBED before me this ____1____ day of December 2006.

_____
NOTARY PUBLIC

12/06/2008
My Commission Expires:

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

JAMES K. MONROE #167435  )
         )
    Plaintiff,   )
         )
  v.      ) CIVIL ACTION NO.  2:06-CV-928-MEF
         )
OFFICER L. THOMAS, et.al.  )
         )
    Defendants.  )

## A F F I D A V I T

**State of Alabama**  :

**Elmore County**   :

  Before me, the undersigned authority, a Notary Public in and for said County and State of Alabama at Large, personally appeared Richard Golden, who being known to me and being by me first duly sworn, deposes and says on oath as follows:

  My name is Richard Golden.  I am presently employed as a Correctional Officer II with the Alabama Department of Corrections at Staton Correctional Facility, P.O. Box 56, Elmore, Alabama 36025.  I am over twenty-one years of age and have personal knowledge of the facts set forth below.

  I have reviewed the complaint of Inmate James Monroe B/M #167435 and this is my response to his complaint.

  In this civil action, Inmate Monroe makes no specific allegations against me.

  On September 4, 2006, while assigned as the Second Shift Assistant Shift Commander, Sgt. Golden responded to a Code Blue (Inmates Fighting) in B-Dormitory.



EXHIBIT

4

To my knowledge, the above- related facts are the entirety of my involvement

with Inmate James Monroe concerning the allegations on which his complaint is based.

I deny that I have violated any well-established civil rights of Inmate Monroe.

RICHARD GOLDEN

SWORN TO and SUBSCRIBED before me this _____ day of December 2006.

NOTARY PUBLIC

12/06/2008

My Commission Expires:

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

JAMES K. MONROE #167435        )
                               )
            Plaintiff,          )
                               )
    v.                          )    CIVIL ACTION NO.  2:06-CV-928-MEF
                               )
OFFICER L. THOMAS, et.al.       )
                               )
            Defendants.         )

# A F F I D A V I T

**State of Alabama**    :

**Elmore County**       :

Before me, the undersigned authority, a Notary Public in and for said County and

State of Alabama at Large, personally appeared George Edwards, who being known to

me and being by me first duly sworn, deposes and says on oath as follows:

My name is George Edwards.  I am presently employed as a Correctional Officer

Supervisor II with the Alabama Department of Corrections at Staton Correctional

Facility, P.O. Box 56, Elmore, Alabama 36025.  I am over twenty-one years of age and

have personal knowledge of the facts set forth below.

I have reviewed the complaint of Inmate James Monroe B/M #167435 and this is

my response to his complaint.

In this civil action, Inmate Monroe makes no specific allegations against me.

On September 4, 2006, George Edwards, Captain of Security received a telephone

called at his residence at approximately 7:25 P.M.  Sgt. C.T. Jenkins notified Captain

Edwards that there had been a stabbing at Staton Correctional Facility.  Sgt Jenkins



further advised that there were three (3) inmates (Vincent Crim B/M #167807, Michael

Grant B/M #152447, and James Monroe B/M #167435), that had been stabbed.

Captain Edwards arrived at Staton Correctional Facility at approximately 7:59 P.M. to

assist with the reported incident.

To my knowledge, the above- related facts are the entirety of my involvement

with Inmate James Monroe concerning the allegations on which his complaint is based.

I deny that I have violated any well-established civil rights of Inmate Monroe.


_George Edwards_
GEORGE EDWARDS


SWORN TO and SUBSCRIBED before me this _4_ day of December 2006.

_Annie Latimer_
NOTARY PUBLIC

_12/06/2008_
My Commission Expires:

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| JAMES K. MONROE #167435 | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.  2:06-CV-928-MEF |
| | ) | |
| OFFICER L. THOMAS, et.al. | ) | |
| | ) | |
| Defendants. | ) | |

### <u>A F F I D A V I T</u>

**State of Alabama**      :

**Elmore County**      :

Before me, the undersigned authority, a Notary Public in and for said County and State of Alabama at Large, personally appeared C. Tyrone Jenkins, who being known to me and being by me first duly sworn, deposes and says on oath as follows:

My name is C. Tyrone Jenkins.  I am presently employed as a Correctional Officer II with the Alabama Department of Corrections at Staton Correctional Facility, P.O. Box 56, Elmore, Alabama 36025.  I am over twenty-one years of age and have personal knowledge of the facts set forth below.

I have reviewed the complaint of Inmate James Monroe B/M #167435 and this is my response to his complaint.

In this civil action, Inmate Monroe makes no specific allegations against me.

On September 4, 2006, while assigned as the Second Shift Assistant Shift Commander, Sgt. Jenkins responded to a Code Blue (Inmates Fighting) in B-Dormitory.



To my knowledge, the above- related facts are the entirety of my involvement with Inmate James Monroe concerning the allegations on which his complaint is based.

I deny that I have violated any well-established civil rights of Inmate Monroe.

C. TYRONE JENKINS

SWORN TO and SUBSCRIBED before me this ___1___ day of December 2006.

NOTARY PUBLIC

12/06/2008
My Commission Expires:

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

JAMES K. MONROE #167435          )
                                 )
          Plaintiff,             )
                                 )
     v.                          )   CIVIL ACTION NO.  2:06-CV-928-MEF
                                 )
OFFICER L. THOMAS, et.al.        )
                                 )
          Defendants.            )

## A F F I D A V I T

**State of Alabama**     :

**Elmore County**        :

Before me, the undersigned authority, a Notary Public in and for said County and

State of Alabama at Large, personally appeared Leon Forniss, who being known to me

and being by me first duly sworn, deposes and says on oath as follows:

My name is Leon Forniss.  I am presently employed as a Correctional Warden III

with the Alabama Department of Corrections at Staton Correctional Facility, P.O. Box

56, Elmore, Alabama 36025.  I am over twenty-one years of age and have personal

knowledge of the facts set forth below.

I have reviewed the complaint of Inmate James Monroe B/M #167435 and this is

my response to his complaint.

In this civil action, Inmate Monroe makes no specific allegations against me.

On September 4, 2006, Leon Forniss, Warden III received a telephone called at

his residence at approximately 7:30 P.M.  Sgt. C.T. Jenkins notified Warden Forniss that

there had been a stabbing at Staton Correctional Facility.  Sgt Jenkins further advised that



there were three (3) inmates (Vincent Crim B/M #167807,Michael Grant B/M #152447, and James Monroe B/M #167435), involved in the incident that had sustained injuries.

As Warden of Staton Correctional Facility, all incidents of a serious magnitude are reported to the Warden. The Warden has the responsibility to ensure all incidents are investigated by the ADOC Investigation and Inspection Division. Investigator Ed Sasser was assigned to investigate this incident and complete the investigative report.

To my knowledge, the above- related facts are the entirety of my involvement with Inmate James Monroe concerning the allegations on which his complaint is based.

I deny that I have violated any well-established civil rights of Inmate Monroe.

_LEON FORNISS_

SWORN TO and SUBSCRIBED before me this ___1___ day of December 2006.

NOTARY PUBLIC

12/06/2008
My Commission Expires: