**UNITED STATES DISTRICT COURT**

MIDDLE DISTRICT OF ALABAMA
OFFICE OF THE CLERK
POST OFFICE BOX 711
MONTGOMERY, ALABAMA 36101-0711

DEBRA P. HACKETT, CLERK

TELEPHONE (334) 954-3600

# NOTICE OF CORRECTION

From:   Clerk's Office

Case Style:  Monroe v. Thomas et al

Case Number:   2:06-cv-00928-MEF

Referenced Pleading: Motion for Discovery - Exhibit G attachment - doc. 23

**This Notice of Correction was filed in the referenced case this date to correct the PDF documents attached to this notice.  Please see the correct PDF documents to this notice.**

# In The United States District Court For The Middle District Of Alabama

James Kelly Monroe,  \*
    Plaintiff \*
v.  \*
Officer L. Thomas, et. AL.  \*  Case NO. 2:06cv928
    Defendants \*

## Motion For Discovery

Comes Now, James Kelly Monroe, the plaintiff in the above styled cause to move the Honorable Court for an order compelling discovery by the above defendants pursuant to Fed. Rules of Civ. Proc. 26 et. seq., and 34(a)(1).

Whereas, on December 18th, 2006 the defendants filed an answer, and a special report to plaintiff's claims, see Special Report Furthermore, each defendant gave an affidavit, see Defendant's exhibits (1-7). Whereas, plaintiff's alleges Louis Thomas was assigned to plaintiff's dorm which was dark, and Thomas had left his post inside the dorm. See Special Report at pg 3. In Contrast, Thomas stated he "was making rounds in Bay #1 when he returned to the Dayroom, and observed

inmates struggling. He immediately called a code blue (inmate fighting) in B-dormitory. See Defendants' exhibit 3. Secondly, Levan Thomas, Warden II, stated he reviewed the complaint......", and on September 4th, 2006 he "received a telephone call at his residence at approximately 7:30 p.m from Sgt. L.T. Jenkins that there had been a stabbing at Staton Correctional Facility. Further, Sgt. Jenkins informed him that Vincent Crim, Michael Grant, and James Monroe had been stabbed. At approximately 8:14 p.m. Warden Thomas arrived at the health care unit to check on the [severity of the inmates wounds. Further, Inspection Investigator, Ed Sasser, arrived at approximately 8:23 p.m. to investigate. Afterwhich, plaintiff was transferred by prison officers in a van to Baptist Medical Center in Montgomery at approximately 8:58 p.m. Exhibit 2 Thirdly, Richard Golden, Correctional Officer II, stated he responded to a code blue (inmates fighting) in B-Dormitory, See Exhibit 4. Fourthly, George Edwards, Correctional Officer Supervisor II, stated he received a telephone call at his residence at approximately 7:25 p.m. from Sgt. L.T. Jenkins that

Pg 3

there had been a stabbing at Staton Correctional facility. Further, Sgt. Jenkins advised him that the inmates were Vincent Crim, Michael Grant, and James Monroe. Finally, Captain Edwards arrived at Staton Correctional facility at approximately 7:59 p.m., See Exhibit 5. Fifthly, C. Tyrone Jenkins, Correctional Officer II, stated he was assigned as the second shift assistant shift commander, and he responded to a code blue (inmates fighting) in B-dormitory, See Exhibit 6. Sixthly, Leon Forniss, Warden III, stated he received a telephone call at his residence at approximately 7:30 p.m. from Sgt. Jenkins informing him on an inmate stabbing. Further, the plaintiff was one of the inmates whom was stabbed. See Exhibit 7. In addition, the initial screening at the prison hospital revealed a 2.5 cm wide stab wound, See State's exhibit (PHS). However, no medical records were provided from the Baptist Medical Center in Montgomery. Furthermore, the incident report reveals that plaintiff was stabbed with a prison made knife which was approximately (10) ten inches long. See Defendants' exhibit (incident Report) Emphasis,

Andre Jolly, attacker of plaintiff, was serving a total of 279 years for attempted murder, assault I, kidnapping and rape. See (State's Mental Health Referral). Finally, Richard Allen, Alabama's prison Commissioner, stated in a Huntsville Times that the department is about 400 Officers short, and the shortage of Corrections Officers is dangerous for inmates, See Plaintiff's Exhibit (G).

Whereas, the plaintiff must show that the defendants placed him at a substantial risk of serious harm when they were subjectively aware that the plaintiff faced a risk and they disregarded that risk by failing to take reasonable measures to abate the risk, Farmer v. Brennan, 128 L.Ed.2d 811 (1994); Also, Carter v. Galloway, 352 F.3d 1346 (11th Cir 2003) (Plaintiff was stabbed by cellmate who classified as "Problematic" did not establish that defendant had a substantial awareness of the substantial risk of serious physical threat). Furthermore, in order to avoid summary judgment, the plaintiff must have presented a genuine issue of material facts, see Clark v. Coats & Clark Inc., 929 F.2d 604 (11th Cir 1991). Therefore, the plaintiff seek discovery of the medical records from Baptist

Medical Center of Montgomery. Also, Any records within the Alabama Department of Corrections which will reveal prior violents against inmates by Andre Jolly while in prison. In addition, any memos or other documents which will reveal that the Officials were aware of Andre Jolly's assaultive behavior. Wherefore, the plaintiff prays the Honorable Court will grant his motion for Discovery.

1-13-07
Date Executed

*James K Mercer*
(Pro Se) Signature

## Certificate of Service

I, James Kelly Monroe, certify that I served a copy of the motion of Discovery on the attorney for the defendants, Troy King, at the Office of the Attorney General Office; 11 South Union Street; Montgomery, Al 36130 by United States Postal Service.

_1-13-07_
Date Executed

_James K Monroe_
(Pro Se) Signature

Address:
James Kelly Monroe
AIS # 167435
Staton C.F.
P.O. Box 56
Elmore, Al 36025

## Certificate Of Service

I, James Kelly Monroe, the plaintiff in the above enumerated suit, do hereby certify that I have serviced a copy of the Motion for Discovery on Troy King at the Office of the Attorney General; 11 South Union Street; Montgomery, Al 36130 by United States Postal Service.

1-13-07
Date Executed

James K Monroe
Pro Se Signature

Return Address:
James Kelly Monroe
AIS# 167435
Staton CF
P.O. Box 56
Elmore, Al 36025

## CRITICAL SAFETY ISSUE

# Shortage of guards dangerous situation

The chronic overcrowding of Alabama's prison systems gets most of the attention, but there is another troubling issue the Department of Corrections faces and that should concern Alabamians. The system has too many prisoners, to be sure, but it also has far too few corrections officers to supervise them.

Prison Commissioner Richard Allen, in an address to a civic club reported by the *Huntsville Times*, said that the department is about 400 officers short of what it needs. That is profoundly disturbing.

"This is a very dangerous and desperate situation for our department," he said. DOC loses 25-30 officers per month to law enforcement jobs that pay better and have more desirable working conditions, he said.

"We're getting by right now on overtime," Allen said, noting that the overtime will run to about $25 million in the current fiscal year.

This is no minor problem. For several years now, Alabamians have been hearing horror stories of one or two corrections officers supervising hundreds of inmates. They have heard wardens say the state has been incredibly lucky not to have had a major outbreak of prison violence, a riot or other disturbance that would be difficult to contain.

The shortage of corrections officers is indeed dangerous. It is dangerous for the corrections officers themselves, who are routinely being placed in situations in which their numbers are plainly inadequate. It is dangerous for other prison personnel.

It is dangerous for the law-abiding public, which could be endangered if a major outbreak of prison violence escalated beyond the capacity of understaffed institutions to contain.

And it is dangerous for the inmates. That is not something Alabamians should be quick to discount. The state has some basic obligations to its prisoners. When the state deprives an individual of liberty, it assumes a solemn responsibility for that individual. That is compromised when there are too few corrections officers in place.

The overcrowding of the prison population is only made more problematic by the all-too-thin ranks of corrections officers. Allen and the department, who hardly need any more issues to deal with, have a big problem here.